David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff Chelsea Addison, on her own
behalf, and behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT FOR

## CENTRAL DISTRICT OF CALIFORNIA

CHELSEA ADDISON, an individual,
on her own behalf and on behalf of all
others similarly situated,

                    Plaintiff,

          v.

MONARCH & ASSOCIATES, INC.,
a California corporation, and DOES
1-10, inclusive,

                    Defendants.

No. EDCV 14-358-GW(JEMx)

Judge George H. Wu

Magistrate Judge John E. McDermott

**ORDER CERTIFYING THE
CLASS IDENTIFIED IN THE
COURT'S REPORT MAY 8, 2017
REPORT AND
RECOMMENDATION**

## INTRODUCTION

Plaintiff Chelsea Addison ("Addison" or "Plaintiff") alleges Tina Coca ("Coca") routinely violated the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. §§ 1692-1692p) while operating her solely-owned corporation, Monarch & Associates, Inc. ("Monarch"), as a debt collector.

On September 1, 2015, Addison filed her motion for class certification. (ECF No. 70.) The Court's ruling on that motion was extended repeatedly to

1   resolve Addison's request for discovery sanctions against Coca and Monarch.

2      On May 8, 2017, Magistrate John E. McDermott entered a report and

3   recommendation ("Report") for terminating sanctions against Tina Coca ("Coca")

4   and Monarch & Associates, Inc. ("Monarch"), for willful spoliation. (ECF No.

5   189.) The Report recommends the Court certify the following class for the

6   purposes of entering a default judgment against Coca and Monarch:

> individual persons who made payments to Monarch and who are
> identified in the file named "transaction_records.csv" produced by
> USAePay to Plaintiff's counsel for the purpose of awarding sanctions,
> actual and statutory damages and attorneys' fees under 15 U.S.C.
> 1692k(a); excluding any person who is (a) any Judge or Magistrate
> presiding over this action and members of their families; (b)
> Defendants, their subsidiaries, parents, successors, predecessors, and
> any entity in which the Defendants or their parents have a controlling
> interest, and current or former employees, officers and directors of
> Defendants; (c) persons who properly execute and file a timely
> request for exclusion from the class; and (d) the legal representatives,
> successors or assigns of any such excluded persons.

13  (*Id*. at 9:16-22.) The Report made several finding to support the recommendation

14  for certification of the foregoing class:

> The USAePay records show Monarch had $2.1 million revenue in
> card payments alone from roughly 1,500 to 3,000 consumers. (Preston
> Decl. ¶16.) The class of consumers identified in these USAePay
> records is ascertainable; is sufficiently numerous under Rule 23(a);
> and satisfies the commonality and typicality requirements under Rule
> 23(a). Moreover, Addison is an adequate class representative, Ethan
> Preston of Preston Law Offices and David C. Parisi of Parisi &
> Havens LLP are adequate class counsel. Finally, the class can be
> certified under Rule 23(b)(1) because there is a limited fund to which
> the class are entitled and (in the addition or the alternative) the class
> can be certified under Rule 23(b)(3) because the common material
> facts (especially Coca's spoliation of evidence) predominate over any
> individual issues.

22  (*Id*. at 8:25-9:8.) The Court solicited another round of briefs from the parties on the

23  Report, which the parties completed. (ECF Nos. 191-193.)

24      On June 5, 2017, the Court adopted the Report, and directed "Counsel for

25  Plaintiff [to] file a proposed class certification order and judgment by June 23,

26  2017." (ECF No. 194.)

## DISCUSSION

Addison has presented a variety of evidence in support of class certification. First, as Monarch's president and designated deponent under Rule 30(b)(6), Coca testified that Monarch treated all its debtors in a uniform manner:

Q.   Based on what I have read, my impression is that Monarch treated some consumers better than others; is that correct?

A.   I think we treated them all good.

Q.   Did you treat everyone the same?

A.   Absolutely.

Q.   When you say "we treated them all good," how do you know that they were treated well?

A.   Because there was — we ran the business one way and that was we are customer based and we wanted to help people. And — and any consumer, if they had to pay, they would ever, so . . . We treated them all the same.

Q.   You say you treated them well. Are there any training manuals?

A.   No.

Q.   Okay. How did employees know how to operate?

A.   Because I verbally told everybody exactly what they need, that we were customer service based and that they need to work with whoever they were with to try to help them.

Q.   Were there any other training materials that were provided?

A.   No.

Q.   Were there any scripts that were provided?

A.   No. We didn't do scripts.

Q.   So the basis of the Complaint is that it's all — they were all verbally instructed by you?

A.   Correct.

Q.   And they were all instructed in the same way?

A.   Um-hmm.

Q.   Is that correct?

|     |     |
| --- | --- |
| A.  | Yes. |
| Q.  | And they all acted the same way? |
| A.  | I hope so. |
| Q.  | Okay. Are you aware of any instances where people deviated from your instructions? |
| A.  | Not that I know of. |
| Q.  | Is there anybody that you know who would know about deviations from the Monarch management? |
| A.  | No. I mean, everybody knew exactly how it was supposed to go. |

(Coca Depo. Tr. at 63:18-65:17, ECF No. 184-7.) There is nothing to contradict the proposition that Monarch's conduct towards its "debtors" was uniform, partly because Coca spoliated essentially all of Monarch's records. Indeed, Coca specifically testified that she destroyed all documents that would show that Monarch complied with the FDCPA. (*Id*. at 65:20-67:10; 199:6-15.)

Second, Addison presented evidence from a lawsuit by the FTC against Coca's former employer(s), *Federal Trade Commission v. Rincon Management Services, LLC*, No. 11-01623. This includes evidence Coca was a signatory listed on the Citibank account for Nationwide Filing Services, Inc. (one of the corporate defendants in *Rincon*) and that many consumers witnessed Nationwide employ the same deceptive debt collection scheme that Monarch used against Addison. (*See* Preston Decl., ECF No. 60-2 ¶7; Pl.'s App., ECF Nos. 60-9 to -13 at 86-90, 96-97; 101-23; 126-28, 156.) Coca admitted she was an employee at Heavy Hitters, Inc. (*See* Coca. Decl., ECF No. 62 at 3:4.) The FTC found scripts consistent with this scheme in the offices for both Heavy Hitters and Nationwide. (Pl.'s Supp. App., ECF No. 63-2 at 280-81; 283; 291-92; 295-321; 324; 326. *See also* Preston Supp. Decl., ECF No. 63-1 ¶¶3-4.) In the *Rincon* case, Coca submitted a declaration (together with 15 other debt collectors) which "contain[ed] nearly identical statements denying knowledge of any illegal collection practices." (Pl.'s Supp.

App., ECF No. 63-2 at 362-63. *Cf. id*. at 335-37.) The Court did not "find these rote denials convincing, however, as [the FTC's] investigator . . . only found scripts which are not compliant with the FDCPA in searching Defendants' offices." (*Id*. at. 363) Here, Coca has spoliated any evidence that Monarch complied with the FDCPA. (Coca Depo. Tr. at 195:12-196:14, ECF No. 184-7. *See also id*. 128:5-23; 131:15-17.)

The similarities between Nationwide/Heavy Hitters' operations and Monarch's operations are evidence of preparation and a common plan under Federal Rule of Evidence 404(b)—evidence that Coca used Monarch to employ the same tactics she learned from from her time with the *Rincon* defendants.[1] The evidence that Monarch violated the FDCPA is in turn relevant evidence of Coca's motive to destroy or conceal evidence of her liability under the FDCPA.[2]

Finally, Addison presented the payment records from USAePay, the Internet-based gateway Monarch used to transmit payment card information to its merchant card processor, Global Payments Direct. (Preston Decl. ¶16.)[3] The USAePay records reflect 8,895 card payments to Monarch between March 5, 2012 and August 5, 2014, totaling $2,119,120. (*Id*.) Addison's counsel has analyzed the

---

[1] *See also United States v. Ramos-Atondo*, 732 F.3d 1113, 1122, 1123 (9th Cir. 2013) (defendant's admission that he was "part of the boat crew in a prior smuggling event" was "relevant to show a modus operandi of smuggling involving use of open panga boats that were to be unloaded on a dark beach in early morning hours"); *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1326 (9th Cir. 1992) (where "association with other smugglers on the premises of an alien smuggling operation employing a modus operandi strikingly similar to" facts of present case, association was relevant to showing defendant knew cargo was illegal aliens and admissible under Rule of Evidence 404(b)).

[2] *Cf. United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir. 1989) (under, e.g., Rule 404(b), "if a person commits a second crime in order to cover up the first, proof of the first crime may be used to show motive for the second"); *United States v. Willoughby*, 860 F.2d 15, 24 (2d Cir. 1988) ("when a defendant has been chaged with attempted or actual obstruction of justice with respect to a given crime, evidence of the underlying crime and the defendant's part in it is admissible to show the motive for his efforts to interfere with the judicial processes").

[3] Except where specified otherwise, all citations to "Preston Decl." refer to the declaration of Ethan Preston at ECF No. 184-2, dated March 28, 2017.

1   USAePay records and determined they identify the name and address of roughly

2   between 1,500 and 3,000 payors.

## I.    The Record Supports Class Certification

4         Certification of a class requires satisfying Rule 23(a)'s requirements of

5   numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). In

6   addition to each element in Rule 23(a), class certification requires that the

7   proposed class fulfill one of the categories under Rule 23(b). *See Xavier v. Philip*

8   *Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011). "In addition to the

9   explicit requirements of Rule 23, an implied prerequisite to class certification is

10  that the class must be sufficiently definite; the party seeking certification must

11  demonstrate that an identifiable and ascertainable class exists." *Id.*

12        Even under the unique circumstances of this case where Coca claims she

13  destroyed all of Monarch's records, there is sufficient evidence to meet Rule 23's

14  more lenient evidentiary standards. "[A]ll that is required" to certify a class is

15  "material sufficient to form a reasonable judgment on each requirement" of Rule

16  23. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Addison's "burden at

17  the class certification stage is slight"; the Court "need only be able to make a

18  reasonable judgment that Rule 23 requirements are satisfied." *Marlo v. United*

19  *Parcel Serv. Inc.*, 251 F.R.D. 476, 487 (C.D. Cal. 2008) (quoted by *Norris-Wilson*

20  *v. Delta-T Group, Inc.*, 270 F.R.D. 596, 601 (S.D. Cal. 2010)). *See also Blackie*,

21  524 F.2d at 901 ("extensive evidentiary showing . . . is not required"). In light of

22  the evidence supporting this Motion, the Court concludes there is sufficient

23  material to form a reasonable judgment that class certification is appropriate.

### A.    The Proposed Class Is Ascertainable

25        Addison can identify class members' names and contact information, as well

26  as the amount they paid to Monarch from the USAePay records. The class

27  identified in the Report is ascertainable because it is "'administratively feasible for

28

the court to ascertain whether an individual is a member.'" *Brown v. NFL Players Ass'n*, 281 F.R.D. 437, 441 (C.D. Cal. 2012) (class definition was acertainable where class member could be identified with defendant's records; citation omitted). *See also Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996) (where defendant maintained records identifying potential class members, "the identity of potential plaintiffs is easily ascertainable such that an identifiable class does exist").

### B.   The Proposed Class Is Sufficiently Numerous

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "[I]mpracticability does not mean 'impossibility,' but only the difficulty or inconvenience in joining all members of the class." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 487 (C.D. Cal. 2006) (citation, punctuation omitted). "Circuit law teaches that a class as little as thirty-nine individuals is large enough to satisfy the numerosity requirement." *McKenzie v. Federal Exp. Corp.*, 275 F.R.D. 290, 296 (C.D. Cal. 2011) (citing, following *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) (numerosity could likely be satisfied "solely on the basis of the number of ascertained class members, i.e., 39, 64, and 71")).

The USAePay records reflect 8,895 payment card charges. This figure admittedly does not account for multiple charges to single individuals, but it is reasonable to expect there are over one thousand individual class members—more than enough to satisfy the numerosity requirement. (Preston Decl. ¶¶3-5.) The Court "may make common sense assumptions to support a finding that joinder would be impracticable." *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 347 (N.D. Cal. 2008) (where potential of 1.5 million potential class members, it was "nonsensical to suggest . . . that out of these

1.5 million, no more than" 22 named plaintiffs encountered barriers to disabled people on property maintained by California Department of Transportation); *Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 120 (C.D. Cal. 2008) (population of 150,000 potential class members established numerosity, even though potential class members who were listed as disabled in census were not necessarily disabled for purposes of the ADA and did not necessarily suffer discrimination from defendant); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004) (where population of potential class members was 150,000 wheelchair users in California, "the only way that this class is not numerous is if virtually none of [the 50 million] transactions [in 2002 at defendant's 220 restaurants in California] involved persons who use wheelchairs or scooters").

## C.   The Proposed Class Satisfies Rule 23(a)(2)'s Commonality and Typicality Requirements

Commonality requires "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality hinges on the factual and legal issues which drive the outcome of the class claims are individualized or common. "[C]ommon contention[s] . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation, punctuation omitted). Commonality exists when a class action will "generate common answers apt to drive the resolution of the litigation." *Id.* (citation, punctuation omitted). Conversely, Rule 23(a)(2) tolerates significant differences between class members:

> All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). *See Armstrong v.*

1   *Davis*, 275 F.3d 849, 868 (9th Cir. 2001) ("individual factual differences among
2   the individual litigants or groups of litigants will not preclude a finding of
3   commonality").

4        Addison has demonstrated sufficient commonality and typicality, given the
5   dispositive and terminating sanctions against Coca and Monarch for spoliation of
6   evidence. Every member of the class suffers the same prejudice and is entitled to
7   the same relief and remedies from Coca's spoliation. Likewise, Coca's spoliation
8   of evidence and her past involvement with the *Rincon* defendants are common to
9   every member of the Class.

10       It would be inequitable to allow Coca to prevent class certification by
11  spoliating Monarch's records. In *Appleton Electric Co. v. Advance-United*
12  *Expressways*, 494 F.2d 126, 135 (7th Cir. 1974), the Seventh Circuit rejected the
13  arguments that a class action was unmanageable from class defendants who failed
14  "to keep adequate records for easy identification" of class members. *Id.* at 135.
15  "Defendants who had early notice of their possible liability cannot avoid a class
16  suit merely because their own actions have made the class more difficult to
17  identify." *Id*. The Ninth Circuit followed *Appleton* in a case where the defendants
18  failed "to record and retain" information required by "statutory recording
19  requirements." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d
20  1301, 1306, 1307 (9th Cir. 1990) ("defendants may not attempt to 'avoid a class
21  suit merely because their own actions have made the class more difficult to identify
22  or locate'"; quoting *Appleton*, 494 F.2d at 135). *Cf. Shurland v. Bacci Cafe &*
23  *Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 145-46 (N.D. Ill. 2010) (determination of
24  "whether a class action is appropriate cannot be a function of [class defendant's]
25  record-keeping practices").[4] Class defendants cannot thwart class actions simply by
26  maintaining defective or inefficient records: "Should a debt collection company . . .

27  
28  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [4]   *See also Oatman v. Sec'y of Treasury*, 893 F. Supp. 937 (D. Idaho 1995).

1  be able to avoid class action liability by mere identifying of inadequate record-

2  keeping, the Congressional purpose behind the [FDCPA] would indeed be

3  thwarted." *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 57-58 (D. Conn. 2000).

4  Because the record for Addison's claims is largely the same as the record for

5  every other class members' claim, she also satisfies the typicality requirement.

6  "The commonality and typicality requirements of Rule 23(a) tend to merge."

7  *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13, 102 S. Ct. 2364, 2371

8  n.13 (1982) cited by, e.g., *McPhail v. First Command Fin. Planning, Inc.*, 247

9  F.R.D. 598, 611 (S.D. Cal. 2007) ("the commonality and typicality inquiries

10  overlap in their focus on the similarities in class claims")); *Armstrong*, 275 F.3d at

11  868 (typicality and commonality share many "underlying issue[s]"). Typicality

12  only requires that absent class members "have injuries similar to those of the

13  named plaintiffs and that the injuries result from the same, injurious course of

14  conduct." *Id*. at 869.

15  **D.    Addison Is an Adequate Representative of the Proposed Class**

16  Rule 23(a)(4) requires that Addison fairly and adequately protect the

17  proposed class's interests. The adequacy test poses two questions: (1) are there

18  conflicts between Addison and the other class members members, and (2) will

19  Addison and his counsel vigorously prosecute the class action? *See Hanlon*, 150

20  F.3d at 1020. *See also Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003)

21  (adequacy "depends on the qualifications of counsel for the representatives, an

22  absence of antagonism, a sharing of interests between representatives and

23  absentees, and the unlikelihood that the suit is collusive"). Here, there is no

24  evidence of any conflict between Addison and any other class member. The Ninth

25  Circuit "does not favor denial of class certification on the basis of speculative

26  conflicts." *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (citation

27  omitted). "[C]ourts have generally declined to consider conflicts . . . sufficient to

28

defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." *Blackie*, 524 F.2d at 909. The burden is on the party opposing certification to show that the named plaintiff will be an inadequate representative. *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 140 (D.N.J. 1984). Addison satisfies Rule 23(a)(4).

### E.    Addison's Counsel Are Adequate

In 2003, the Judicial Conference added Rule 23(g) to require an separate analysis of the adequacy class counsel independent from the analysis of class representative adequacy under Rule 24(a)(4). *See* Fed. R. Civ. P. 23(g) advisory committee's note on 2003 amendment. Rule 23(g) provides that the Court must consider counsel's work on the case, experience in handling complex litigation, counsel's knowledge and the resources of counsel. Fed. R. Civ. P. 23(g)(1)(A). "Adequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights*, 249 F.R.D. at 349. The fact that Addison has obtained terminating sanctions against Coca—despite Coca's spoliation and repeated misrepresentations about how she handled relevant documents—is itself affirmative evidence that Addison's counsel is more than adequate. Addison's counsel has skillfully and doggedly litigated this case, notwithstanding Coca's determined efforts to prevent discovery. *Cf.*, *e.g.*, *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 524 (C.D. Cal. 2011); *McKenzie v. Federal Exp. Corp.*, 275 F.R.D. 290, 302-03 (C.D. Cal. 2011).

### F.    The Class Meets the Requirements of Rule 23(b)(1)

Rule 23(b)(1) provides for certification where

> prosecuting separate actions by or against individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1)(B). Rule 23(b)(1)(B) authorizes "the limited fund class

action, aggregating claims made by numerous persons against a fund insufficient to satisfy all claims. . . . "Classic" limited fund class actions include claimants to . . . company assets in a liquidation sale[.]" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (citations, punctuation omitted). The Ninth Circuit has contemplated certification under Rule 23(b)(1)(B) in "the case where the claims of all plaintiffs exceeded the assets of the defendant and hence to allow any group of individuals to be fully compensated would impair the rights of those not in court." *In re Madison Assocs.*, 183 B.R. 206, 217-18 (Bankr. C.D. Cal. 1995) (quoting *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 (9th Cir. 1976)).

There are three elements for certification under Rule 23(b)(1)(B): "a 'fund' with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability, by an equitable, pro rata distribution." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1197 (9th Cir. 2001) (quoting *Ortiz*, 527 U.S. at 841). Here, Monarch collected some $2.1 million via card payments between March 5, 2012 and August 5, 2014. (Preston Decl. ¶16.) Conversely, Coca has repeatedly asserted that she and Monarch are insolvent. This is sufficient to establish the first element: Coca represents neither she nor Monarch has $2.1 million to pay back to the class. The second element is met because no one has a better claim to whatever remains of the $2.1 million extortionately collected by Monarch than the class members. Finally, Addison can comply with the third element by distributing shares of whatever fund remains to class members on a *pro rata* basis.

Class certification under Rule 23(b)(1)(B) offers some practical advantages over certification under Rule 23(b)(3). Certification under Rule 23(b)(1)(B) dispenses with class notice or a right for class members to opt-out:

> The purpose of Rule 23(b)(1)(B) is to protect plaintiffs in situations where separate lawsuits might exhaust a defendant's resources such that earlier plaintiffs might recover at the expense of later plaintiffs. Consistent with this rationale, Rule 23(b)(1)(B), read with subdivision

(c)(2), does not allow absent class members to receive notice or to exclude themselves.

*In re Paxil Litig.*, 212 F.R.D. 539, 553 (C.D. Cal. 2003). The Court certifies the class under Rule 23(b)(1)(B) to avoid the expense of notice and a mandatory opt-out procedure: this will permit Addison to focus more resources on pursuing restitution to the class.

### G.    The Class Meets the Requirements of Rule 23(b)(3)

In the alternative, the Court finds that the class can also be certified under Rule 23(b)(3). Certification under Rule 23(b)(3) requires the Court find (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are satisfied in cases where "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

**Predominance:** "The main concern in the predominance inquiry [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). In light of the Report's terminating sanctions adopted by the Court, the issues common to the class entirely outweigh the individual issues.

> When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (quoting *Hanlon*, 150 F.3d at 1022). Hence, predominance is satisfied when "[a] common nucleus of facts and potential legal

remedies dominates th[e] litigation." *Hanlon*, 150 F.3d at 1022. The mere existence of some individualized facts does not defeat predominance, just as it does not rule out commonality. "To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1065 (N.D. Cal. 2007). "Plaintiffs need not establish that there are no individual issues, only that the class issues predominate and that a class action is superior." *Phelps v. 3PD, Inc.*, 261 F.R.D. 548, 559 (D. Or. 2009) (citing, e.g., . *Las Vegas Sands*, 244 F.3d at 1163). Common issues predominate in this case where "[i]ndividualized issues are few, and most of them are likely to be relatively easy [to resolve]." *Las Vegas Sands*, 244 F.3d at 1166.[5]

**Superiority:** Predominance overlaps some aspects of superiority. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). *See also Vinole*, 571 F.3d at 944 (same). The Court's analysis of judicial economy has to compare a class action to 3,000 separate individual actions (as opposed to no litigation whatsoever). The test for superiority "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. The alternative to the class proposed herein is individual litigation, which would require a thousands

---

[5]    "[T]he existence of certain individualized or deviating facts will not preclude certification if most class members were subjected to a [defendant's] polic[ies] in a way that gives rise to consistent liability or lack thereof." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008). "Individual issues do not render class certification inappropriate so long as such issues may effectively be managed." *Id.* (citation omitted). *See also Akaosugi v. Benihana Nat. Corp.*, 282 F.R.D. 241, 251 (N.D. Cal. 2012) (if the "common method of proof . . . cover[s] the predominance of fact issues," the Court "can tolerate a limited number of individual issues with discrete proof"); *Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534, 541 (N.D. Cal. 2010) ("even if the [defendant's] disclosures were not identical, claims need only be reasonably co-extensive to satisfy the predominance requirement").

of consumers extorted by Monarch to bring their own lawsuits over a few hundred dollars on FDCPA claims which few (if any) are competent to prosecute. It is plain that a class proceeding is the superior means of vindicating the class members' rights. The "purpose of Rule 23(b)(3) [is] 'to allow integration of numerous small individual claims into a single powerful unit.'" *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722 (9th Cir. 2010) (quoting *Blackie*, 524 F.2d at 899). Rule 23(b)(3) was intended for

> [the] vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all. . . . The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods*, 521 U.S. at 617 (citation, punctuation omitted). In comparison, individual litigation by Class members "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs. In most cases, litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1023. Class proceedings are superior where many consumers would "be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover." *Las Vegas Sands*, 244 F.3d at 1163.[6] In this case, a class action is preferable to a multitude of individual actions.

Again, Coca's spoliation cannot favor denial of class certification. In *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658 (C.D. Cal. 2009), the Court noted "a number of challenges to managing the proposed class," including the fact that defendants' records could not identify certain class members. *Id*. at 671. The Court found that

---

[6]   *See also Hanlon*, 150 F.3d at 1023 (class action superior to individual action, when individual action means "less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery"); *Kamar*, 254 F.R.D. at 406 (class treatment is a superior mechanism where "all members of the class have a mutual interest in proving [the defendant's] liability [but] the individual damages are not high enough for class members to pursue individually").

these difficulties did not outweigh the efficiencies of class certification because the alternative was "individual claims for a small amount of damages," which mean that "if plaintiffs cannot proceed as a class, most will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover." *Id.* at 672 (quoting *Hanlon*, 150 F.3d at 1023, Las Vegas Sands, 244 F.3d at 1163; punctuation omitted).

> [T]here is no realistic alternative to a class action in this case, making a class action undoubtedly the superior method of adjudication. . . . Further, permitting the potential class members, who individually would be unable to vindicate their rights, to collectively assert their causes of action is consistent with the primary purpose of a Rule 23(b)(3) class action.

*Id.* (citations omitted). The same analysis applies here. Most Class member do not understand the true facts of Monarch's extortionate scheme, let alone know they have legal claims arising from those facts or possess the resources necessary to prosecute those claims. Certification under Rule 23(b)(3) would be appropriate.

## CONCLUSION

Despite Coca's spoliation, Addison is still able to identify class members. Class certification is appropriate here: Coca's spoliation impacts all class members uniformly, Coca testified that Monarch treated all its debtors in a uniform manner, and her prior involvement with the *Rincon* defendants is common to every class member. The Court hereby ORDERS that the following class is certified under Rule 23(b)(1)(B):

> individual persons who made payments to Monarch and who are identified in the file named "transaction_records.csv" produced by USAePay to Plaintiff's counsel for the purpose of awarding sanctions, actual and statutory damages and attorneys' fees under 15 U.S.C. 1692k(a); excluding any person who is (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest, and current or former employees, officers and directors of Defendants; (c) persons who properly execute and file a timely request for exclusion from the class; and (d) the legal representatives, successors or assigns of any such excluded persons.

*Cf.* Fed. R. Civ. P. 23(c)(1)(B). The Court designates Plaintiff Chelsea Addison as class representative and designating Ethan Preston of Preston Law Offices and David C. Parisi of Parisi & Havens LLP as class counsel. *Cf.* Fed. R. Civ. P. 23(c)(1)(B), (g). Because the Court certifies the class under Rule 23(b)(1)(B), it finds that no notice to the class is necessary under Rule 23(c)(2)(A). (The class may also be certified under Rule 23(b)(3), so that if the Court were to later find it necessary to do so, the Court can order appropriate notice to the class at that time.) The Court will determine an attorneys' fee award after the Court enters a default judgment against the Defendants for the class. Fed. R. Civ. P. 23(h).

Date: June 23, 2017

GEORGE H. WU, U.S. District Judge

# CERTIFICATE OF SERVICE

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that copies of the attached documents were this date served upon the parties below Fed. R. Civ. P. 5(b) by causing copies of such documents to be mailed to the below parties' last known address on the date below:

Tina Coca
Monarch & Associates, Inc.
2345 Cornell Circle
Corona, California 92881

*Defendant*

Dated: June 22, 2017            By: /s/Ethan Preston

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
212 Marine Street Suite 100
Santa Monica, California 90405
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff Chelsea Addison,*
*on her own behalf, and behalf of all*
*others similarly situated*